UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| RICHARD BLACKBURN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:11-cv-58 |
| v. | ) | |
| | ) | *Mattice / Lee* |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Richard Blackburn brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB"). Plaintiff and Defendant have both moved for summary judgment [Docs. 11, 16]. Plaintiff alleges the Administrative Law Judge ("ALJ") failed to properly consider Plaintiff's subjective complaints, did not adequately evaluate the opinion of his treating physician, failed to consider non-exertional limitations stemming from pain and medication side effects, and violated Plaintiff's due process rights by failing to fulfill his role during the hearing. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 11] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 16] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed his application for DIB on December 27, 2008, alleging disability as

of June 19, 2000 (Transcript ("Tr.") 132-35).[1]  Plaintiff's claim was denied initially and upon

reconsideration and he requested a hearing before the ALJ (Tr. 73-78, 81-86).  The ALJ held a

hearing on February 1, 2011, during which Plaintiff was represented by an attorney (Tr. 29-55).  The

ALJ issued his decision on February 8, 2011 and determined Plaintiff was not disabled because there

were jobs in significant numbers in the economy which he could have performed prior to his date

last insured (Tr. 14-25).  The Appeals Council denied Plaintiff's request for review, making the

ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3).  Plaintiff filed the

instant action on October 28, 2011 [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.     Hearing Testimony

Plaintiff was 57 at the time of the hearing before the ALJ and had an eighth grade education

(Tr. 38, 167).  The ALJ referenced the prior decision, which outlined Plaintiff's work history as a

heavy equipment operator and laborer and his work-related injury that caused problems with

Plaintiff's right wrist and lumbar spine (Tr. 32).  The ALJ noted during the hearing that because

Plaintiff's date last insured was December 31, 2006, something had to change between the last

decision and the date last insured for Plaintiff to obtain disability benefits, and most of the evidence

in the record was from after December 31, 2006 and was therefore irrelevant (Tr. 32-33).  Plaintiff

testified that Dr. Thomasson had been his treating physician for many years and he had been taking

OxyContin for a long time, since probably 2000 (Tr. 43-45, 48).  Plaintiff experienced constipation,

dizziness, drowsiness, found it difficult to concentrate, and had problems sleeping while taking the

---

[1]  Plaintiff filed a prior application for benefits on March 19, 2003, alleging disability as of
July 15, 2001 (Tr. 60).  This application was denied by a different ALJ by decision dated September
24, 2004 (Tr. 57-67).  The alleged onset date was later amended to November 1, 2004 because the
ALJ would not reopen the prior decision (Tr. 32, 42, 157).

medication (Tr. 45-46, 52-54). Because of his back pain, Plaintiff was only comfortable sitting in his recliner with his feet up and would do so for probably six hours on a typical day (Tr. 53-54).

### B. Medical Records

Plaintiff had a work-related injury in July 2000 and returned to regular work duty in 2001 (Tr. 218-21). Plaintiff followed with Dr. Clendenin in February and March 2001 and it was noted Plaintiff had no relief from trigger point injections and had refused an epidural injection; Dr. Clendenin believed Plaintiff had reached maximum medical improvement and had a 5% whole person impairment (Tr. 235-37). Plaintiff complained of continued lower back pain to Dr. Clendenin on October 21, 2004 and was scheduled for an epidural steroid injection, which was performed November 15, 2004 (Tr. 231-32). On November 3, 2004, Dr. Clendenin wrote a letter stating that Plaintiff had presented in 2004 with pain similar to what he had reported to Dr. Clendenin in 2001 and the symptoms were consistent with Plaintiff's July 2000 injury (Tr. 234). Plaintiff returned to Dr. Clendenin on December 12, 2004 and reported his medications and the epidural steroid injection were not helping (Tr. 230). Dr. Clendenin explained to Plaintiff that his MRI was not consistent with his alleged pain and it appeared to be a chronic pain problem best treated at a formal pain clinic (Tr. 230).

Plaintiff followed with Dr. J. Richard Thomasson from 2006 to 2011 (238-322, 353-56, 366-86). In the records before Plaintiff's date last insured, Plaintiff complained of constant low back pain and was diagnosed with hypertension and osteoarthritis; he was taking OxyContin (Tr. 299-305). In December 2006, Plaintiff reported hurting his lower back muscle and was diagnosed with tenosynovitis (Tr. 299-300). Records after December 31, 2006 indicate Plaintiff returned to Dr. Thomasson for regular follow up visits, medication refills and other complaints, such as ear pain, allergies and problems sleeping; it was often noted that Plaintiff was functional on medication, but

3

his dosage of OxyContin did increase (Tr. 238-98, 366-86).

Scans in June 2009 of Plaintiff's brain, chest and thyroid were all generally normal; scans of Plaintiff's knees showed minimal degenerative changes (Tr. 343-49). A Doppler test of Plaintiff's lower extremities the same day revealed no evidence of hemodynamically significant arterial disease in either leg (Tr. 350, 352). An MRI of Plaintiff's lumbar spine also performed in June 2009 showed degenerative disk disease with desiccation at multiple levels, mild disk bulging with no disk herniation, and osteophytosis at T12 and L1 (Tr. 351). Two file reviewers in 2009 -- one physical and one mental -- could not address Plaintiff's disability claim for the period in question (Tr. 323-39).

Dr. Thomasson filled out a medical source statement on September 2, 2009 (Tr. 358-64). In the statement, Dr. Thomasson opined Plaintiff was not capable of performing sustained light work, even if he could alternate between sitting and standing throughout the workday (Tr. 359). Dr. Thomasson further opined Plaintiff could sit, stand and walk for no more than an hour at a time during an eight hour day; could only sit for one hour at a time and would need to lie down for three hours at a time during an eight hour workday, and could not stand or walk for any length of time (Tr. 360). Plaintiff could lift zero to 10 pounds for up to two hours and 11 to 15 pounds for up to one hour and could carry zero to five pounds for up to two hours, but could only carry six to 10 pounds for up to one hour (Tr. 360-61). Dr. Thomasson opined Plaintiff could reach, handle, finger, or feel for 45 minutes each in an eight hour day and he could not stoop, kneel, crouch for any amount of time (Tr. 361-63). Dr. Thomasson indicated the onset of Plaintiff's limiting conditions at this severity started December 31, 2001 (Tr. 363).

4

## III.    ALJ'S FINDINGS

### A.    Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B.    ALJ's Application of the Sequential Evaluation Process

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since November 1, 2004 the alleged onset date, through December 31, 2006, the date last insured (Tr. 19). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, right wrist injury, and depression (Tr. 19). The ALJ

5

determined these impairments were severe because they caused significant limitations in Plaintiff's ability to perform basic work activities (Tr. 12). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 20). The ALJ noted that Plaintiff's physical condition met no Listing and specifically discussed Listing 12.04 as it pertained to Plaintiff's mental impairments (Tr. 20-21). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work with positional changes as necessary that consisted of unskilled activities and simple, one and two step tasks (Tr. 21). At step four, the ALJ found Plaintiff was unable to perform any of his past relevant work (Tr. 23). At step five, the ALJ noted Plaintiff was age 53, an individual closely approaching advanced age, as of the date last insured (Tr. 23). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 23). This finding led to the ALJ's determination that Plaintiff was not under a disability from November 1, 2004, the alleged onset date, through December 31, 2006, the date last insured (Tr. 24).

## IV. ANALYSIS

Underlying Plaintiff's arguments is a basic dissatisfaction with statements made by the ALJ at the hearing that Plaintiff believes undermined the ALJ's consideration of his claim. First, Plaintiff argues the ALJ did not properly consider his subjective complaints because statements the ALJ made during the hearing reflect the ALJ did not undertake the required evaluation process as he had already reached his conclusions about Plaintiff's credibility prior to Plaintiff's testimony. Second, Plaintiff asserts the ALJ did not properly evaluate the opinion of Dr. Thomasson because he claimed he did not understand the opinion and made other statements during the hearing that indicated he

6

was not going to evaluate the opinion as required. Third, Plaintiff argues the ALJ failed to consider his non-exertional limitations caused by pain and medication side effects in part because the ALJ overlooked a changed circumstance in Plaintiff's medication. Finally, Plaintiff argues he was not afforded due process and was denied a full and fair hearing because the hearing was superficial as the ALJ had already made his decision on Plaintiff's claim.

## A.     Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not,

however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

## B.  ALJ's Statements During the Hearing

As noted above, Plaintiff's four arguments essentially drill down to the overarching claim that the ALJ made statements during the hearing indicating he was biased, predisposed against Plaintiff, and inattentive to evidence that might have changed the outcome. In order to address these concerns, it must be remembered that this is a date-last-insured claim with a prior adverse decision. Thus, "[i]n order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing to 42 U.S.C. § 423(a) and (c) and *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "The crucial date in a social security case is the date that claimant's insured status expired" and evidence of disability after that date is "generally of little probative value." *May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *5 (N.D. Ohio June 1, 2011). "Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where the evidence 'relates back' to the claimant's limitations prior to the date last insured." *Id.; see also Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003) ("Post-

8

expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured."). "The related back evidence is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date." *May*, 2011 WL 3490186, at *5. Although medical evidence after December 31, 2006 is referenced above, the ALJ was not able to consider such evidence in determining Plaintiff's disability prior to that date unless the evidence related back to his conditions before the end of 2006.

In addition, because Plaintiff had filed a prior application for benefits and was found to not be disabled (a decision which the ALJ did not reopen), the Commissioner was bound to the previous decision due to collateral estoppel principles unless Plaintiff could prove a "change in circumstances" since the prior decision. *See Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837, 842 (6th Cir.1997). Collateral estoppel applies "to preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review." *Brewster v. Barnhart*, 145 F. App'x 542, 546 (6th Cir. 2005). "[A] change in the period of disability alleged does not preclude the application of res judicata . . . . Plaintiff must show that circumstances have changed since the first hearing before the ALJ by presenting new and material evidence of deterioration." *Slick v. Comm'r of the Soc. Sec. Admin.*, No. 07-13521, 2009 WL 136890, at *4-5 (E.D. Mich. Jan. 16, 2009). As such, the ALJ in the instant case had to view the medical evidence with an eye toward finding some change from the previous ALJ decision (which found Plaintiff could perform light work with positional changes as needed) through the date last insured.

### C.     ALJ's Credibility Determination and Dr. Thomasson's Opinion

Plaintiff's first two arguments appear related because they both turn on statements the ALJ made during the hearing that allegedly undermine the ALJ's decision as to Plaintiff's subjective

complaints and the ALJ's consideration of Dr. Thomasson's opinion. Essentially, Plaintiff argues the ALJ did not properly evaluate his credibility per the applicable regulations because he made several statements indicating he had already made up his mind before Plaintiff ever testified [Doc. 12 at PageID# 34-35]. Plaintiff further argues the ALJ did not properly evaluate Dr. Thomasson's opinion because he seemed confused about who wrote the opinion and what it meant during the hearing before any testimony was taken. Plaintiff asserts the ALJ made a "preconceived decision" and did not properly address Dr. Thomasson's opinion as required by regulations and case law [*id.* at PageID# 37-39]. Moreover, Plaintiff contends the ALJ's statements at the hearing are at odds with boilerplate language in his decision, as the ALJ indicated he was giving no weight to Dr. Thomasson's opinion but wrote that he gave great weight to treating physician opinions in the decision [*id.* at PageID# 39-40]. Plaintiff generally argues the ALJ conducted no thoughtful analysis of Dr. Thomasson's opinion [*id.* at PageID# 40-41].

The Commissioner argues Plaintiff's hearing testimony is only one factor in the credibility determination, it was clear the ALJ had carefully reviewed the evidence in the record prior to the hearing, and the ALJ's determination that Plaintiff was not entirely credible was supported by substantial evidence in his medical records [Doc. 17 at PageID# 63-65]. The Commissioner further argues the ALJ properly considered Dr. Thomasson's opinion, discussed it in his decision, and gave it little weight because it was internally inconsistent and was not supported by his own treatment notes or Plaintiff's presentation on exam [*id.* at PageID# 66-68]. The Commissioner asserts the ALJ also discounted Dr. Thomasson's opinion because there were no findings indicating significant degenerative changes and Plaintiff's MRI in 2009--years after the date last insured--showed Plaintiff's degenerative disc disease was mild [*id.* at PageID# 68]. In light of the ALJ's analysis of Dr. Thomasson's opinion in the written decision, the Commissioner argues the ALJ's comments

during the hearing are not indicative of his full consideration of the opinion [*id.* at PageID# 68-69].

As such, the Commissioner contends the ALJ complied with the applicable regulations and the goal

of the treating source regulation [*id.* at PageID# 69].

> The ALJ made the following relevant statements in his decision:

>> In terms of the claimant's alleged chronic extreme pain, while I do not doubt that the claimant experiences some degree of frequent, perhaps even daily, discomfort, I do not find it to be debilitating to the extent alleged and thus give these allegations only some weight. The claimant's orthopedist noted in 2004 that his complaints were excessive given the degree of injury shown on his MRI scans. Although not directly relevant to his condition as of the date last insured, I also note that MRI scans from June 2009 describe his condition as "desiccation at multiple levels and only some mild disk bulging." As this degenerative condition should only worsen over time, the relatively mild findings in 2009 strongly suggest that the claimant's condition in 2006 was not disabling. This is further supported by his examination results from late 2006 and January 2007 which show only some paraspinal tenderness that later resolves. There is no medical evidence of record to support different limitations than those stated in the decision of September 24, 2004.

>> In making this finding, I note the September 2, 2009, medical source statement from the claimant's pain management provider, an opinion I find entitled to only little weight for several reasons. First, although it purports to state the claimant's condition since December 31, 2001, there is nothing in the record as a whole to indicate that this physician even treated the claimant prior to 2006. Any findings before that date are speculative at best. Second, his reported findings are inherently inconsistent. For example, he opines that the claimant can stand or walk for an hour "at one time," but cannot stand or walk for an hour cumulatively "during the entire eight-hour workday." Such inconsistences do not instill confidence in his other opinions. Finally, and most significantly, these opinions are not supported by his contemporaneous treatment notes. During the months immediately before and after the date last insured, this doctor examined the claimant on several occasions. Each of these examinations revealed essentially benign conditions, with no indication that the claimant's condition had greatly deteriorated since 2004.

>> There are no new x-rays, MRI scans, or other objective findings to indicate additional significant degenerative changes, and even by

11

2009 the claimant's degenerative disc disease is described as "mild."
I thus give this medical source statement only little weight, and find
that the record as a whole does not support a departure from the
residual functional capacity stated in the September 24, 2004 opinion.

(Tr. 22-23).

The statements contained in the ALJ's written decision are not appreciably different from the remarks he made during the hearing, although the ALJ at times did use inappropriately salty and unprofessional language during the hearing. Nonetheless, the ALJ remarked as to Plaintiff's mild MRI scans from 2009 (Tr. 33), minimal degenerative changes in his condition (Tr. 33), the inconsistencies in Dr. Thomasson's form (Tr. 34-35), his belief that Plaintiff experienced some daily pain (Tr. 36-37), and Plaintiff's generally normal examination results during the relevant period (Tr. 37). Although Plaintiff argues these comments were made prior to his testimony and that the ALJ had reached these conclusions before hearing further evidence, I find the ALJ had reviewed relevant documents prior to the hearing, such as the medical evidence in the record and the prior decision by the other ALJ, and was commenting on what he had reviewed. The ALJ still solicited testimony from Plaintiff about his subjective complaints; however, because the ALJ was bound by the need for a significant change after the prior decision and the hearing took place several years after Plaintiff's date last insured, the relevant testimony was essentially limited to Plaintiff's condition between September 24, 2004 and December 31, 2006.

Moreover, although Plaintiff expresses significant dissatisfaction at statements he believes were derogatory about the evidence in the record, the ALJ made other statements not referenced by Plaintiff which evince consideration of the strict rubric of collateral estoppel and the expiration of Plaintiff's date last insured. For example, after explaining the insurance concept to Plaintiff, the ALJ made the following statements at various points in the hearing:

If you had insurance when you turned 55 you'd have gotten disability. But since your insurance expired when you were 53 and 10 months old you don't. Now that's . . . a damn shame . . . but it is the law. And there's not much fudging or messing with it can be done. . . . And it just really burns me up that it's not the case but it isn't, it really isn't. And it just doesn't seem right somehow but that's the way the facts lay out. . . . This, this really doesn't seem fair at all, I mean and I know that. . . . I mean if I just had something to hang my hat on. If I, you know, if there was a horrible MRI in 2009, just anything I could point to and say I'm going to change what was done. . . . I looked at it and looked at it and I thought, you know, this really sucks. . . . I have studied this thing left and right because it does seem just like a bad deal from somebody to be six or eight months away from having a lifetime of work and then not being able to get disability.

(Tr. 40-42, 49).

Taken as a whole, the ALJ's decision indicates he considered the evidence and provided good reasons for his eventual conclusions as to Plaintiff's credibility and Dr. Thomasson's opinion. Indeed, the ALJ's decision appears to have been the result of a careful review of the evidence in light of the restrictions in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). The ALJ's confusion as to Dr. Thomasson's form during the hearing is not reflected in his decision, as he points out relevant inconsistencies in Dr. Thomasson's form in his decision and notes it appears to be based on a short period of treatment during which Plaintiff's examinations were generally normal. Moreover, although Plaintiff points to what he believes is an inconsistency in the ALJ's decision, where the ALJ stated he gave no weight to Dr. Thomasson's opinion and later stated he gave great weight to treating physicians' opinions, it is clear from the decision that the ALJ gave little weight to Dr. Thomasson's opinion and later stated he was giving great weight to treating physician opinions, medical reports, and reports of state agency consultants, "except where lesser weight was given in a particular area as noted elsewhere in this decision" (Tr. 23).

As for Plaintiff's credibility, the Commissioner is correct in stating that Plaintiff's hearing

testimony was only one factor in the ALJ's analysis and, as noted above, it is unclear how Plaintiff's testimony from 2011 could have been particularly helpful in determining his condition between September 24, 2004 and December 31, 2006. The ALJ solicited testimony from Plaintiff, however, and considered Plaintiff's statements in conjunction with the medical evidence in the record during that timeframe, in addition to evidence that may have related back to his condition before December 31, 2006. The ALJ concluded, after considering Plaintiff's statements and the relevant evidence available, that Plaintiff's subjective complaints were not entirely in line with the objective findings of his physicians and that the RFC determination made by the prior ALJ in his September 24, 2004 decision would not be disturbed. *See Abney v. Astrue*, CIV A 507-394-KKC, 2008 WL 2074011 (E.D. Ky. May 13, 2008) (describing similar circumstances with a claimant whose medical evidence did not establish progressively worsening conditions and which led to a similarly unfavorable credibility determination).

After carefully reviewing the hearing transcript and the ALJ's decision, I **FIND** the ALJ's statements during the hearing, while needless and uncouth at times, do not create or reflect error in his decision and I **CONCLUDE** the ALJ's credibility determination and treatment of Dr. Thomasson's opinion are supported by substantial evidence.

### D. Plaintiff's Non-Exertional Limitations

In his third argument, Plaintiff argues the ALJ did not properly consider his non-exertional limitations caused by pain and side effects from his medication [Doc. 12 at PageID# 41-42]. Specifically, Plaintiff asserts the ALJ ignored a statement from the prior decision that Plaintiff was only taking over-the-counter medications for pain and had already made his decision when he asked Plaintiff about what pain medication he had taken since 2000 [*id.* at PageID# 42-43]. Plaintiff

14

contends the side effects from his medication, which medications had been increased, were relevant to the determination of his RFC and ability to do work and had to be properly considered [*id.* at PageID# 43-44].

The Commissioner argues the prior decision establishes that Plaintiff had previously complained of side effects from medication, but the ALJ penning that decision determined Plaintiff was not fully credible and did not include any non-exertional limitations due to side effects in his RFC determination [Doc. 17 at PageID# 70-71]. As such, the Commissioner contends the evidence and prior decision establish that Plaintiff was taking at least two of the same medications (and experiencing the same side effects) at the time of the prior decision [*id.*]. The Commissioner notes the ALJ must consider only *credible* non-exertional limitations and that here, the ALJ found Plaintiff's complaints of side effects and extreme pain were not fully credible [*id.* at PageID# 71-72]. Thus, after determining Plaintiff's complaints as to side effects had not changed since the prior decision, and determining Plaintiff was not fully credible, the ALJ was not required to incorporate any non-exertional limitations into Plaintiff's RFC [*id.* at PageID# 71-72].

The prior ALJ noted that Plaintiff testified to side effects from his medications, such as grogginess, at the hearing (Tr. 61), although it is unclear whether these side effects were from Plaintiff's pain medication, medication for mental conditions, or both; the prior ALJ did note Plaintiff's medication list from September 2004 listed only over-the-counter medications for pain and that was a factor in his determination that Plaintiff was not entirely credible (Tr. 63-64).

At the 2011 hearing in the instant case, Plaintiff testified that he had been taking similar medications for pain for a long time, probably since 2000 (the time of his injury), and that he had been switched from OxyContin to another medication because the OxyContin was not helping as much (Tr. 43-45). Plaintiff initially did not understand the ALJ's question about side effects, but

15

with some prompting, Plaintiff testified his medications caused constipation, headaches, dizziness and difficulty focusing (Tr. 45-46). Plaintiff testified the constipation was the worst side effect, and other medication he had taken for that problem had not helped (Tr. 46-47). Plaintiff further testified the medications made him drowsy and he would doze off for a couple of hours, but that the medications also caused problems sleeping and he had to take another medication to help him sleep (Tr. 53-54). The lack of sleep also caused him to lose focus during the day, and Plaintiff stated this had been a problem in 2006 (Tr. 54). Plaintiff's medication list relevant to this claim lists medications for anxiety and depression that he had been taking for eight years (i.e., 2002 or 2003), and Plaintiff indicated these medications caused drowsiness on his disability information forms (Tr. 191, 201, 214).

To some degree, this argument relates to the ALJ's credibility determination with respect to Plaintiff's pain, and I have already found the ALJ's credibility determination was supported by substantial evidence. The prior ALJ determined Plaintiff was not fully credible as to his complaints of side effects and pain, and therefore did not impose any applicable non-exertional limitations on Plaintiff when fashioning his RFC. Here, the ALJ found no reason to alter that RFC because there had been no change in circumstances between the date of the 2004 decision and December 31, 2006 and Plaintiff was not fully credible as to his pain and side effects. Given that I have found the ALJ's credibility determination was supported by substantial evidence, it appears Plaintiff was taking at least some of the same medications (and experiencing some of the same side effects) at the time of the prior decision, and Plaintiff did not testify to any new and extreme side effects that were relevant from the date of the last decision through December 31, 2006. Thus, I further **FIND** the ALJ did not err in reaching an RFC determination that did not include non-exertional limitations.

### E.    Due Process and ALJ Bias

Finally, Plaintiff argues he was denied due process and a full and fair hearing because the ALJ made biased comments about Plaintiff's counsel's cases before he ever heard testimony in Plaintiff's case, made several disparaging remarks about Plaintiff's case and the evidence in the record during the hearing, even using profanity at one point, and made statements that submitted his opinion for that of the doctor [Doc. 12 at PageID# 45-48]. Moreover, Plaintiff contends it was clear during the hearing that the ALJ had already made up his mind about Plaintiff's claim before Plaintiff testified, and thus could not have fulfilled his role of assessing all the available evidence as he was required to do [*id.* at PageID# 48-49]. Plaintiff references his argument as to the side effects of his pain medications as an example of the ALJ making his decision, making an assumption to fit that decision, and not properly considering the full record [*id.* at PageID# 49-50]. Plaintiff generally asserts the ALJ was not professional during the hearing and argues the ALJ's various statements were unacceptable [*id.* at PageID# 50-51].

The parties filed a stipulation as to comments made by the ALJ about Plaintiff's counsel's cases prior to the hearing, which essentially consists of a statement wherein the ALJ called Plaintiff's "the impossible case" and made a disparaging remark about another of Plaintiff's counsel's cases [Doc. 13].

The Commissioner initially argues that Plaintiff received a fair hearing because the ALJ adequately questioned him and developed the record, and that any bias of the ALJ toward the lawyer based on the comments made before the hearing is not bias toward Plaintiff [Doc. 17 at PageID# 72-73]. The Commissioner further argues Plaintiff has not met his burden of overcoming the presumption that the ALJ was unbiased because while Plaintiff may point to unprofessional language, none of the ALJ's statements indicate that his eventual decision did not involve a full

17

consideration of the evidence [*id.* at PageID# 74-75]. Instead, the Commissioner characterizes the ALJ's statements as comments upon the evidence and expressions of his opinion, which are permissible forms of judicial conduct and do not establish bias [*id.* at PageID# 75]. The Commissioner contends the ALJ never put himself in the position of the doctor and instead fully addressed Dr. Thomasson's opinion [*id.* at PageID# 75-76].

In the United States Court of Appeals for the Sixth Circuit, courts must start with the presumption that "policymakers with decisionmaking power exercise their power with honesty and integrity" and "any claim of bias must be supported by a 'strong showing' of bad faith." *Carelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436-37 (6th Cir. 2010) (citations and internal quotations omitted). "[F]or the alleged bias to be disqualifying, it must 'stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Shears v. Comm'r of Soc. Sec.*, No. 1:09-cv-1011, 2010 WL 3385518, at *9 (W.D. Mich. Aug. 2, 2010) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563 (1966)). Evidence such as "impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to meet the burden of establishing bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). The Sixth Circuit noted that it rejected a bias argument in *Wells v. Apfel*, No. 99-5548, 2000 WL 1562845, at *5 (6th Cir. Oct. 12, 2000), where the ALJ was skeptical of the plaintiff and his behavior included a "demeaning and discourteous manner towards the plaintiff and his counsel." *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004). The *Collier* court noted that the *Wells* court concluded the ALJ's "obvious frustration, emotional mannerisms and abruptness were insufficient to establish actual bias." *Id.*

As I noted above, regardless of certain uncouth statements by the ALJ during Plaintiff's

hearing, it is clear the decision consisted of extensive review of the prior ALJ's decision, the medical evidence in the record relevant to the period before the date last insured, the medical evidence in the record after the date last insured to determine if anything related back to before December 31, 2006, and testimony at the hearing.  As the Commissioner argued, the ALJ's statements before the hearing were disparaging more generally towards Plaintiff's counsel's cases and did not indicate any specific bias against Plaintiff's case beyond a statement of opinion that it was an impossible case, an opinion that was not reflected in the ALJ's analysis of Plaintiff's claim in his decision.  As outlined *supra*, the transcript of the hearing indicates the ALJ made statements that were less than ideal, certainly, but also made several statements indicating he scoured the medical evidence in the record to determine if there was a way Plaintiff could have received benefits given the strict circumstances at issue, where the prior decision found Plaintiff was not disabled and there was a relatively brief span of time between that decision and Plaintiff's date last insured.

In short, Plaintiff has not provided sufficient evidence to overcome the assumption that the ALJ's decision was made in good faith and without bias.  There is nothing in the ALJ's "impatience, dissatisfaction, annoyance, . . . anger," "frustration . . . and abruptness," skepticism or "discourteous manner" that was extreme or specific enough to establish the ALJ's decision was made on some basis other than the merits of Plaintiff's claim, using the information the ALJ learned during his review of all the applicable evidence.  Accordingly, I **CONCLUDE** Plaintiff's due process rights were not violated and, after considering all of Plaintiff's arguments, I **CONCLUDE** the decision of the ALJ was supported by substantial evidence.

## V.  CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

**RECOMMEND** that:[2]

> (1)  Plaintiff's motion for summary judgment [Doc. 11] be **DENIED**.
>
> (2)  The Commissioner's motion for summary judgment [Doc. 16] be **GRANTED**.
>
> (3)  The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).